William K. SEILER, Jr., Individually and as the Administrator of the Estate of William K. Seiler, III, Deceased, Appellant,

v.

The CITY OF BETHANY, Oklahoma, a Municipal Corporation; and Officer G.C. Applegate, Individually and in His Capacity as Police Officer for the City of Bethany, Oklahoma; and Terry Fowler, Individually and in His Capacity as Dispatcher for the City of Bethany, Oklahoma, Appellees.

No. 66183.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 10, 1987.

Michael Gassaway, Oklahoma City, for appellant.

Stephanie J. Mather, Oklahoma City, for appellees.

ROBINSON, Presiding Judge:

On June 19, 1985, twenty-seven year old, William K. Seiler, III, was arrested by the Bethany Police for driving under the influence of alcohol. Subsequently, the arrestee was placed in a segregated cell and ultimately he committed suicide by hanging himself with his own shirt. This action

was brought on behalf of decedent's estate alleging negligence and violation of decedent's constitutional rights pursuant to Title 42 U.S.C. § 1983. The Defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted, and this motion was sustained by the trial court. Decedent's estate (Appellant) has perfected this appeal urging that it was error for the trial court to sustain the motion to dismiss.

I.

■ First, before addressing whether Appellant's petition was sufficient to withstand the motion to dismiss, it is necessary to discuss the standard of care required of custodial personnel. Neither party has cited, nor has our research revealed, any Oklahoma decisions directly on point, therefore we turn to other jurisdictions for persuasion. In *Clemets v. Heston,* 20 Ohio App.3d 132, 485 N.E.2d 287 (1985), the Ohio Court of Appeals recognized a general "custodial negligence" rule which requires that custodial personnel owe a duty to those in their custody to keep the inmates safe and protect them from harm. Under this rule, the requisite standard of care is that which is reasonable and ordinary for the health, care and well being of the prisoner. *Clemets,* 485 N.E.2d at 289. The general rule that the sheriff or jailer must exercise "reasonable care and diligence" to protect those in his custody from known or reasonably perceivable dangers is also confirmed in Restatement 2d of Torts § 314(A)(4).

Thus, although the standard of "reasonable care and diligence" is generally recognized, this standard offers little guidance for the disposition of this case. However, one of the leading cases concerning allegations of § 1983 violations is *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). In *Estelle,* a prisoner injured his back while engaging in prison work and he brought a § 1983 action alleging inadequate medical treatment in violation of his Eighth Amendment rights to be free from cruel and unusual punishment. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. On appeal, in determining whether the prisoner's constitutional rights were violated, the United States Supreme Court determined that a prisoner's Eighth Amendment right may be violated if prison officials were deliberately indifferent to the serious medical needs of the prisoners. However, in adopting this "deliberate indifference" standard, the highest Court was particular in noting that not every claim alleging inadequate medical treatment would be a violation of the Eighth Amendment. For example, inadvertent failure to provide adequate medical care or failure to provide care for those needs which are unperceivable would not be sufficient to state a claim. In essence, the *Estelle* court recognized that in order for a prisoner[1] to state a cognizable claim, he "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Although *Estelle* involved a physical injury and the accompanying medical needs, several jurisdictions have recognized that there is "no sound underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Bowring v. Godwin,* 551 F.2d 44, 47 (4th Cir.1977); *See also, Inmates of Allegheny City Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir.1979).

■ In a recent prison suicide case, *Partridge v. Two Unknown Police Officers of the City of Houston,* 791 F.2d 1182 (5th Cir.1986), the Fifth Circuit adopted the "deliberate indifference" standard in determining whether the detainee's Eighth Amendment rights were violated. This standard has been frequently applied in other prison

---

1. Although *Estelle* involved the rights of a convicted prisoner, the Eighth Amendment right to be free from cruel and unusual punishment has been extended to pretrial detainees. *See, Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d

suicide cases.[2] Thus, we hold that the standard to be applied in the instant case is the "deliberate indifference" standard. However, in adopting this standard, we are persuaded by the language relied upon in *Guglielmoni v. Alexander,* 583 F.Supp. 821 (D.Conn.1984), wherein the Court noted:

> The "deliberate indifference" standard implicitly requires assessment of states of mind in order to determine the constitutional adequacy of inmate medical care. Isolated negligence or malpractice is insufficient to state an *Estelle* claim. Deliberate indifference exists when action is not taken in the face of a "strong likelihood, rather than a mere possibility" that failure to provide care would result in harm to the prisoner. (Citations omitted) *Guglielmoni,* 583 F.Supp. at 826.

In essence, Appellant's claim may be actionable if the prison officials were faced with the strong likelihood that the failure to provide care for the prisoner would bring harm to him. Also, in determining whether the conduct of prison officials may be considered deliberately indifferent to the prisoner's needs, Appellant should prove a pattern of such conduct. As noted in *Todaro v. Ward,* 565 F.2d 48, 52 (2nd Cir. 1977):

> .... while a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures. Indeed it is well-settled in this circuit that "a series of incidents closely related in time ... may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners." (Citations omitted).

■ Further, in order for Appellant to establish liability on the part of the municipality, the Appellant must prove a "policy" of deliberate indifference. In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Monel,* 436 U.S. at 694, 98 S.Ct. at 2037.

Thus, one of the primary issues of this case is whether the City of Bethany Police Department has a custom of inadequate care of pretrial detainees, or inadequate training of police personnel. In order to establish a municipal custom, Appellant must prove a "persistent, widespread practice of city officials or employees, which ... is so common and well settled as to constitute a custom that represents municipal policy." *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984).

## II.

■ Having discussed the requisite standard of care and the limits of the municipality's liability, we now will consider the pleadings to determine if they are sufficient to withstand a motion to dismiss. When ruling on a demurrer or a motion to dismiss a petition, a petition must be liberally construed and all of its allegations of fact must be taken as true, together with all reasonable inferences therefrom. *Eckel v. Adair,* 698 P.2d 921 (Okla.1984). Thus, all well pleaded facts must be admitted to be true.

The pleadings allege the following facts: Appellant was arrested for driving under the influence of alcohol at approximately 11:45 p.m. on June 19, 1985. Throughout the arrest process, the decedent repeatedly threatened suicide and acted in a manner that should have put the attending officers on notice. Despite these suicide threats and the inference that harm was foreseea-

447 (1979); *Norns v. Frame,* 585 F.2d 1183 (3d Cir.1978).

2. *See, Danese v. Asman,* 670 F.Supp. 709 (E.D. Mich.1987); *Roberts v. City of Troy,* 773 F.2d 720 (6th Cir.1985).

ble, decedent was placed in a segregated cell without supervisor or continual observation. Ultimately, decedent was found hanging from his own shirt and was taken to the hospital, where he died approximately one (1) hour later.

The basis of Appellant's complaint is that the police officers were put on notice of Appellant's suicidal tendencies, and thus, they were negligent in consciously disregarding these warnings by failing to adequately supervise him. After reviewing the pleadings, we conclude that they are sufficient to withstand a motion to dismiss. Appellant has alleged sufficient facts which may establish the City's indifference to Appellant's medical needs. Many questions remain unanswered. For example, did the City of Bethany have in effect certain procedures concerning suicidal detainees? Were these procedures followed? Were police personnel adequately trained to handle arrested citizens with mental problems? Does the City have a custom of inadequately monitoring detainees, which would amount to a deliberate indifference to their medical care? If this cause reaches trial, these will be questions of fact for the jury to determine.

Therefore, we reverse and remand this cause for further proceedings not inconsistent with this opinion. We wish to stress that under the case law cited herein, Appellant must prove more than an isolated occurrence[3] of alleged indifference. Specifically, discovery should be geared toward determining the police department's policy or procedure, if any, regarding suicidal inmates, and whether this procedure was followed.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

REYNOLDS and GARRETT, JJ., concur.

---

**3.** However, municipal liability may be imposed for a *single* decision by municipal policymakers under appropriate circumstances. *Cf., Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).